

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00302-CV

**ESECURITEL HOLDINGS, LLC**,
Appellant

v.

**YOUGHIOGHENY COMMUNICATIONS-TEXAS, LLC** d/b/a Pocket Communications;
and Youghiogheny Communications-Northeast, LLC d/b/a Pocket Communications,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-20147
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Phylis J. Speedlin, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:  December 5, 2012

REVERSED AND REMANDED

ESecuritel Holdings, LLC ("eSecuritel") appeals the trial court's order denying its plea in abatement and motion to compel arbitration. We reverse the trial court's order and remand the cause with instructions that the trial court grant eSecuritel's plea and abatement and motion to compel arbitration.

**BACKGROUND**

Appellees Youghiogheny Communications – Texas, LLC d/b/a Pocket Communications and Youghiogheny Communications – Northeast, LLC d/b/a Pocket Communications (collectively "Pocket") sell wireless telecommunications services under the brand name Pocket Communications. Pocket had an agreement with eSecuritel whereby eSecuritel provided "equipment replacement and repair services" to Pocket's customers. This agreement contained the following arbitration clause:

> Dispute Resolution. Any claim, controversy or dispute between the parties that cannot be settled by private negotiation shall be resolved by final and binding arbitration. A single arbitrator in accordance with the then current Commercial Rules of the American Arbitration Association ("AAA") shall conduct such arbitration in the Atlanta, Georgia, metropolitan area. The arbitrator shall be bound to apply the laws of Delaware and, where applicable, federal statutory law. The arbitrator shall have authority to award compensatory damages only. The arbitrator's award shall be final and binding and may be entered in any court having jurisdiction thereof. Subject to Section 17, each Party shall bear its own costs and attorney's fees. Notwithstanding the foregoing, the Parties agree that prior to the commencement of any arbitration proceeding to resolve any dispute, controversy, or claim arising in connection with this Agreement other than with respect to any insurance regulatory matter, the Parties shall, upon the request of any Party, attempt in good faith to resolve such non-regulatory dispute, controversy, or claim through non-binding mediation held in Atlanta, Georgia pursuant to the Commercial Mediation Rules of the AAA. Notwithstanding anything to the contrary herein, neither Party is precluded from seeking injunctive relief in any court of competent jurisdiction for equitable remedies.

In September 2010, eSecuritel initiated arbitration proceedings pursuant to this provision, alleging that Pocket breached the agreement by terminating it prematurely and without cause. Arbitration proceeded for over a year. The arbitrator bifurcated the case between liability and damages, and after a hearing, determined that Pocket was liable to eSecuritel. The arbitrator then conducted the hearing on damages and was due to issue his final award when, on December 23, 2011, Pocket filed its Original Petition and Application to Stay Arbitration in state district court, arguing that the arbitration clause is void and unenforceable. According to Pocket's petition,

under the parties' agreement, eSecuritel undertook the obligation to act as the insurer or agent of Pocket's customers.[1] And, because eSecuritel was not licensed to act as an insurer or agent in Texas,[2] Pocket alleged that "the Agreement is illegal and void." Further, because the arbitration clause states that the arbitrator shall be bound to apply the law of Delaware, and where applicable, federal statutory law, Pocket alleged in its petition that the arbitration clause "prohibits the arbitrator from applying Texas law regarding the rights and ability to act as an insurer in the state of Texas." According to Pocket's petition, the arbitration clause "stands in direct derogation of Texas insurance laws and purports to require the arbitrator to overlook the fundamental public policy of the State of Texas as reflected in the Texas Insurance Code." Pocket thus concluded in its petition that the arbitration clause is void and unenforceable. Pocket requested the trial court issue an order staying and requiring dismissal of the arbitration. It also sought a declaratory judgment that (1) the arbitration clause is illegal, void, and/or unenforceable; and (2) the agreement is illegal, void, and/or unenforceable. It moved for both temporary and permanent injunctive relief. The trial court issued an *ex parte* temporary restraining order, which prevented the arbitration from proceeding. ESecuritel then filed a plea in abatement and a motion to compel arbitration. The trial court denied eSecuritel's plea in abatement and motion to compel. ESecuritel then filed this interlocutory appeal.

## JURISDICTION

In its brief, Pocket argues that we lack jurisdiction over this appeal because arbitration is currently pending but has only been stayed. According to Pocket, "[w]here an arbitration is pending but has been challenged in or stayed by a court, neither a motion to compel arbitration

---

[1] ESecuritel disputes that it undertook the obligation to act as the insurer and agent of Pocket's customers and instead argues that it was merely providing replacement and repair services.

[2] Pocket claims that it did not become aware that eSecuritel was not licensed by the State of Texas to act as an insurer or agent until December 2011.

nor an appeal from the denial of such a motion is available." For support, Pocket cites *Dealer Computer Services, Inc. v. Red Hill Ford, Inc.*, Cause No. 05-10-00983-CV, 2010 WL 3566124 (Tex. App.—Dallas 2010, no pet.). In response, eSecuritel argues that (1) *Dealer Computer* is distinguishable and (2) we have jurisdiction over this appeal under the reasoning applied in *Schlumberger Technology Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We agree with eSecuritel.

Section 51.016 of the Texas Civil Practice and Remedies Code provides that in a matter like this one, which is subject to the Federal Arbitration Act, "a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. § 16." TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012). 9 U.S.C. § 16 permits an appeal from an order "denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16. 9 U.S.C. § 4, in turn, provides the following:

> A party aggrieved *by the alleged failure, neglect, or refusal* of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4 (emphasis added).

The Dallas Court of Appeals in *Dealer Computer*, 2010 WL 3566124, at \*1, considered whether it had jurisdiction to review a trial court's order denying a motion to compel arbitration when the underlying case was in arbitration but the trial court had stayed the arbitration proceedings. In concluding that it lacked jurisdiction over the appeal, the Dallas Court of Appeals emphasized that, pursuant to federal law, a petition to compel arbitration "must be based

on a party's alleged failure, neglect, or refusal to arbitrate under a written agreement." *Id.* (citing 9 U.S.C. § 4). The court explained that "[n]o such allegation exists here." *Id.*

In considering a similar issue, the First Court of Appeals in *Schlumberger*, 355 S.W.3d at 797, noted that in determining whether a petition to compel arbitration is based on a party's alleged failure, neglect, or refusal to arbitrate, a court should look at "the substance and function of the application viewed in the context of the record."[3] Thus, the court looked at the appellant's motion to compel arbitration in the context of the record to determine whether the denial of the petition was subject to interlocutory review. *Id.* As in *Dealer Computer*, the appellee argued that the First Court of Appeals did not have jurisdiction because the parties were already engaged in an ongoing arbitration that had been stayed by the trial court. *Id.* In distinguishing *Dealer Computer*, the First Court of Appeals explained that in *Dealer Computer*, the appellee had argued that the arbitration proceedings should be stayed based on alleged arbitrator misconduct. *Id.* at 798. According to the court, unlike arbitrator misconduct, the appellant in its case had alleged that appellee "sought to compel a separate arbitration rather than submitting its defenses to the AAA." *Id.* The First Court of Appeals concluded that this allegation "is functionally equivalent to an allegation that [appellee] failed, neglected, or refused to arbitrate the disputed issue." *Id.* Thus, in viewing the motion in context of the record, the court concluded that "the substance and function of [appellant]'s motion was to allege the existence of an agreement to arbitrate that applied to the parties dispute . . . and that [appellee] refused to arbitrate in accordance with that agreement." The court held that even though arbitration proceedings were ongoing, it had jurisdiction to review the trial court's order. *See id.* at 798-99.

---

[3] Although *Schlumberger* dealt with jurisdiction under the Texas Arbitration Act, the issue central to both *Schlumberger* and *Dealer Computer* was whether the opposing party had refused to arbitrate. *See Schlumberger*, 355 S.W.3d at 797-98; *Dealer Computer*, 2010 WL 3566124, at *1.

Here, while arbitration proceedings were pending, Pocket filed in the trial court an Original Petition and Application to Stay Arbitration, which argued that the arbitration clause was void and unenforceable and requested that the trial court stay and dismiss the pending arbitration proceedings. In response to this petition, eSecuritel filed a plea in abatement and motion to compel arbitration, stating that there was an agreement to arbitrate the dispute between the parties and that Pocket had refused to comply with arbitration:

> Instead of seeking to complete the Arbitration, Pocket has failed, neglected, and refused to complete the arbitration by filing this lawsuit, and seeking and obtaining the TRO. A comparison of (1) eSecuritel's contractual claims asserted in the Arbitration and Pocket's defensive claim that the Agreement is illegal, void and unenforceable <u>with</u> (b) the Arbitration Clause's scope, establishes that e-Securitel's claims and Pocket's defenses fall within the broad scope of applicability of the Arbitration Clause and are arbitrable.

In viewing eSecuritel's motion in the context of the record, we conclude that we have jurisdiction over this interlocutory appeal. *See id.*

## ARBITRATION CLAUSE

Pocket argues that assuming we have jurisdiction, the district court's order denying the motion to compel should be affirmed because the plain language of the arbitration clause exempts claims like the ones brought in this lawsuit. Pocket specifically points to the following sentence in the arbitration clause: "Notwithstanding anything to the contrary herein, neither party is precluded from seeking injunctive relief in any court of competent jurisdiction for equitable remedies." Pocket emphasizes that its lawsuit only seeks injunctive relief and equitable remedies. Thus, it argues that the arbitration clause does not apply to the instant lawsuit. However, as pointed out by eSecuritel, in interpreting a similar contract that contained both an arbitration clause and a clause allowing a party to "apply to a court of competent jurisdiction for an injunction in appropriate cases," the Fifth Circuit has explained the purpose of such an injunction provision is merely "to preserve the *status quo* during the pendency of the arbitration

proceeding" by allowing a trial court to grant injunctive relief. *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1163 (5th Cir. 1987) (quoting *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972)). That is, the "right to seek injunctive relief in court and the right to arbitrate are not incompatible." *Id.* (quoting *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983)). Thus, the court concluded that the presence of such a provision did not make the arbitration provision illusory. *Id.*

Similarly, the Ninth Circuit in *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1281-82 (9th Cir. 2009), interpreted an arbitration clause that contained the following provision: "Notwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award." *Id.* In interpreting this language, the court concluded that the equitable claims exception was "intended to apply only to claims designed to maintain the status quo between the parties." *Id.* at 1285. The court reasoned that this interpretation was consistent with the Federal Arbitration Act, which allows a trial court to stay trial of an action pending arbitration, but does not allow a trial court to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties. *Id.* at 1286. According to the court, "it makes sense that if the parties wanted to give themselves the ability to seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement." *Id.* Likewise, in *WMT Investors, LLC v. Visionwall Corp.*, No. 09 Civ. 10509, 2010 WL 2720607, at *215 (S.D.N.Y. 2010), a federal district court interpreted an arbitration clause that allowed a party to seek equitable relief from any judicial court of proper jurisdiction by way of temporary and permanent injunctions. The federal district court rejected a litigant's argument that under the terms of the arbitration agreement, any claim forming the basis of a demand for

injunctive relief was not subject to arbitration. *Id.* at \*217. The court explained that the only way to interpret the contract so that all its provisions dwelled in harmony with each other was to conclude that the provision regarding injunctive relief was available to parties "in aid of arbitration, rather than . . . transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed for." *Id.* at \*218.

We agree with this reasoning of these courts and hold that the arbitration clause's reference to injunctive relief and equitable remedies was intended not to circumvent arbitration but to allow the parties to preserve the status quo pending arbitration.

We further note that Pocket has not just brought a lawsuit for injunctive relief and equitable remedies. It has also sought a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Declaratory relief pursuant to Chapter 37 is not a form of equitable relief. *See Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970); *Space Master Int'l, Inc. v. Porta-Kamp Mfg. Co.*, 794 S.W.2d 944, 947 (Tex. App.—Houston [1st Dist.] 1990, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.001-.011 (West 2008 & Supp. 2012).

## COMPELLING ARBITRATION

Pocket argues that because eSecuritel was not licensed to act as an insurer or agent in Texas, the agreement is illegal and void. And, because the arbitration clause states that the arbitrator shall be bound to apply the law of Delaware, and where applicable, federal statutory law, the arbitration clause thus "prohibits the arbitrator from applying Texas law regarding the rights and ability to act as an insurer in the state of Texas." According to Pocket, "the arbitrator is compelled by the very terms of the agreement to ignore fundamental Texas insurance law." Pocket argues the "arbitrator cannot look to Texas law to answer the question of whether eSecuritel is entitled to payment for the illegal sale of insurance and Delaware law cannot inform

the arbitrator on the fundamental legality of the contracts at issue." Thus, Pocket argues that the arbitrator "faces a dilemma," because if he fails "to apply Delaware law, then he impermissibly exceeds his powers, which would render any award invalid." "But if the arbitrator observes his contractual mandate and does apply Delaware law, then the fundamental public policy of Texas regarding the regulation of the insurance industry is violated." Thus, according to Pocket, because the arbitration clause "requires the arbitrator to apply an unlawful standard, the arbitration clause is unenforceable." In response, eSecuritel argues that Pocket's "circular" argument challenges the enforceability of the contract as a whole, not just the arbitration provision, and that the United States Supreme Court has held that such challenges must be brought to the arbitrator and not to a trial court.[4]

Whether there is a valid and enforceable agreement to arbitrate is a legal question subject to *de novo* review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Under both the FAA and the TAA, we apply ordinary state contract law principles in order to decide whether a valid arbitration agreement exists. *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied). Once a valid agreement to arbitrate has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *Id.*

Here, no one disputes that there was an agreement signed by the parties that contains an arbitration provision. Instead, the dispute between the parties is whether the arbitration provision

---

[4] In its brief, while eSecuritel disputes Pocket's assertion that eSecuritel was a purveyor of insurance and required to get a license from the Texas Department of Insurance to perform under the contract, eSecuritel emphasizes that such an argument must be addressed to the arbitrator, not the trial court.

is enforceable. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442 (2006), the Supreme Court considered the question of whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality. In *Buckeye*, the party resisting arbitration argued that the arbitration clause violated various Florida lending and consumer-protection laws, rendering the arbitration clause "criminal on its face." *Id.* at 443. In considering this issue, the Court noted that "[c]hallenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types." *Id.* at 444. "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* The Supreme Court concluded that the party resisting arbitration had brought the second type of challenge. *Id.* According to the Court, the crux of the party's "complaint is that *the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge*." *Id.* (emphasis added). The Court noted that in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), it had held that unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. *Buckeye*, 546 U.S. at 445-46. Applying *Prima Paint* to the facts of its case, the Supreme Court concluded that because the challenge was not specifically to the arbitration provision, but was also to the entire contract, the challenge should be considered by an arbitrator, not a court. *Id.* at 446.

The Court also rejected the argument that the party attempting to compel arbitration had not shown the existence of a valid and enforceable arbitration agreement. The Court explained that it did not read "contract" so narrowly. *Id.* at 448. "There can be no doubt that 'contract' . . . must include contracts that later prove to be void." *Id.* "Otherwise, the grounds for revocation

would be limited to those that rendered a contract voidable – which would mean (implausibly) that an arbitration agreement could be challenged as voidable but not as void." *Id.* The Court noted that such an approach would permit "a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." *Id.* at 448-49. Thus, the court reaffirmed that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.

Applying *Buckeye* to the facts here, while Pocket argues that it is challenging only the arbitration clause, its original petition and application to stay arbitration, and its first amended petition and application to stay arbitration clearly allege that the entire agreement is void and illegal because eSecuritel was not licensed as an insurer or agent in the State of Texas. Pocket's argument that eSecuritel was required to have a license under Texas insurance law is an argument about whether eSecuritel can *perform* at all under the agreement. Thus, while Pocket is challenging the arbitration clause, it is also challenging the agreement as a whole. Under *Buckeye*, such a challenge should go to the arbitrator, not the court. *See id.*; *see also In re Labatt*, 279 S.W.3d at 649 (applying *Buckeye*'s holding).

## CONCLUSION

Because Pocket's challenge to the agreement and arbitration clause should be decided by the arbitrator, the trial court erred in denying eSecuritel's motion to compel arbitration. We therefore reverse the trial court's order and remand the cause with instructions that the trial court grant eSecuritel's plea and abatement and motion to compel arbitration. [5]

Karen Angelini, Justice

---

[5] Having reached this conclusion, we need not address the waiver issue brought by eSecuritel.